Nichols, C. J.
This is an action on a policy of insurance issued by The New Amsterdam Casualty Company to Charles W. Johnson, of the city of Cleveland, Ohio, indemnifying him against bodily injuries which, independently of all other causes, were effected solely and exclusively by external, violent and accidental means.
*156 The petition avers that on June 6, 1909, the insured had' been out horseback riding, and coming home took a cold plunge, as he frequently had done before and as is frequently done by others, under the same or similar conditions, without any ill effects whatever; that the plaintiff in taking such cold bath did not expect, anticipate or intend that any ill effects should follow in consequence thereof and that the' plaintiff had no reason to expect or anticipate such ill effects; that in consequence of the shock caused to plaintiff’s system, by contact externally of the cold water in said plunge with his body, there was caused an acute dilation of the heart of the plaintiff for a period of twenty-nine weeks.
The defendant company in its answer denied that the injury, alleged in the petition to have been sustained by voluntarily taking a cold plunge bath, was a bodily injury effected solely and exclusively by external, violent and accidental means.
The essential facts in the case are entirely free from controversy.
The insured was a well and active man. He had no orgánic trouble with his heart. He was accustomed to take cold plunges, when heated and after exercising and horseback riding, without any apparent trouble. The cold plunge caused the heart dilation. The dilation of the heart from taking the cold plunge was an unusual result and one not reasonably to have been expected.
However, the danger in taking such bath when heated is known to the average layman. Heart dilation following the taking of such bath when *157 heated is a natural result from a natural cause. The bath was taken in tub, not under shower or spray.
Verdict was had for the insured.
Error is prosecuted on two grounds:
First. That the trial court erred in overruling the motion of the company for an instructed verdict.
Second. In the ' charge of the court defining what would constitute an injury occurring by accidental means under terms of the policy.
Argument: The issue in the case is one of law wholly.
The respective claims of the parties may be fairly stated as being: First. On the part of the insured: That if the event preceding the injury, and which proximately caused the injury, produced injurious results not common or usual or to be reasonably anticipated as a result therefrom, the unlooked-for result makes the initial event an accident and the injury one sustained by accidental means — in short, the result determines the cause.
Second. On the part of the company: That the event preceding the injury (in this case the cold plunge) and which was the proximate cause of the injury must be in the nature of an accident; that an unexpected or unusual result of an act not an accident in itself does not render it (the act) an accident or the consequent injury one happening from accidental means. In other words, the cause determines the result.
In construing the language of an insurance policy it has been universally and properly held that the *158 words of limitation should be most favorably construed in behalf of the insured and against the company.
This does not mean, however, that a strained, unnatural and forced meaning should be given words or phrases, but rather the everyday meaning, which must have been plainly in the minds of the contracting parties.
It can hardly be asserted that the act of voluntarily entering a bathtub filled with cold water is an accident. If some one had pushed the insured into a tub so filled, or for that matter, into a pond of cold water, and the results had followed, which ensued when he voluntarily committed his body to the water, then the act would have been an accident in the ordinary acceptation of the term.
It is not an accident for which an insurance company would be liable if one so insured would, while in a state of lively perspiration, stand before an open window, take cold and die. Nor if, by some grave immoderation in eating, acute indigestion be occasioned and heart failure result. Nor yet, if in taking a dose of strychnine, aware of its poisonous nature and knowing that in certain-sized doses it is a heart stimulant and not deadly, but mistaking the effect of a given quantity, death ensues.
It is urged that heart dilation is not usually attendant on the taking of a cold bath; when it does occur it is unexpected, unusual and unforeseen and therefore an accident.
Undoubtedly an accident, in both its technical and commonly accepted meaning, is an event which occurs without one’s foresight or expectation and *159 wholly undesigned, yet it is not true that every unusual, unforeseen and unexpected event is an accident within the true meaning of the term as used in insurance policies.
The attending physician in the case at bar says that the result which followed the bath, while unusual, was yet the direct and natural effect of the voluntary immersion of the body of the insured.’ The insured did nothing but that which he intended to do. He planned for and deliberately entered on the project and, so far as appears, it was carried out precisely as intended. He did not slip or fall. The water was no colder than he wanted it to be. His aim was to lower the temperature by a cold-water bath. Such a bath chills the skin by causing the external blood vessels to contract, hence the blood pressure would be raised and might embarrass a weakened heart by the increased work required. Under normal conditions such a bath really gives tone to the circulation, and in treating cases of high fever the cold-water bath is now generally administered, causing the external blood vessels to contract, increasing the blood pressure and reducing the heartbeat. In this particular instance the weakened heart failed to do its work properly; the sudden contraction of the surface blood vessels must have necessarily and correspondingly increased the blood pressure, thus throwing an additional burden on the heart. It failed to respond to the work of propelling the blood over the body and acute dilation occurred.
In every moment of our conscious or sleeping hours we are all possible victims of errors of the *160 human system, respiratory, circulatory or digestive; errors that our physicians would term accidents of nature. Even the diseases which afflict humanity are frequently the result of accidents pure and simple. As has been expressively said, nature slips a cog and the well man is invalided.
The separation of injuries, occasioned by accidental means from those occasioned by means non-accidental, is not free from difficulty, and an attempt to logically analyze every supposable case of this character and differentiate along consectary lines would lead to some contradictions.
While the views of the laity cannot in the very nature of things be the controlling gauge wherewith to measure doubtful legal propositions, yet it might be suggested that the average business man, were the question involved in this case submitted to him, would in all likelihood be surprised if not shocked to learn that it had been held that an injury of the character suffered by the defendant in error should be followed by the payment of indemnity by a strictly accident insurance company.
The court is constrained to hold that the result which followed the taking of the bath by the insured was not an accident upon which recovery can be had under the wording of the policy. A case is cited where recovery was had by reason of a ruptured blood vessel occasioned by the mere lifting one’s self naturally out of a chair. It is felt by this court that in such case, as in the case at bar, such a conclusion would be unduly pressing the construction of the language universally employed in naked accident policies. It would amount to an unfair *161 and unjust enlargement of the company’s liability and would convert accident companies into both sick-beneficial and life insurance companies; and, worse than this, the apparent vice of it is that if countenanced it would inevitably result in the necessity of requiring constantly increasing premiums from the vast multitude of the laboring classes as well as people of moderate means who chiefly buy this character of insurance.
The judgment of the court of appeals will be reversed and judgment rendered in favor of plaintiff in error.

Judgment reversed and judgment for plaintiff in error.

Shauck, Johnson, Donahue and Newman, JJ., concur.
Wanamaker, J., dissents.